UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
NONIE PEGORARO,                                     :

                            Plaintiff,              :

          -against-                                 :          **MEMORANDUM AND ORDER**

ERNESTO MARRERO, INDIVIDUALLY AND    :          10 Civ. 00051 (VM)(KNF)
IN HIS CAPACITY AS CORPORATE
COMPLIANCE OFFICER; NEW YORK CITY     :
HEALTH AND HOSPITAL CORPORATION;
ALAN AVILES, PRESIDENT, NEW YORK CITY :
HEALTH AND HOSPITAL CORPORATION;
CITY OF NEW YORK,                                   :

                            Defendants.             :
-------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE


## BACKGROUND

Plaintiff Nonie Pegoraro alleges her employment was terminated by the defendants

wrongfully, based on her whistle blowing activities.  She seeks damages and injunctive relief.

Before the Court is the plaintiff's motion "to compel production of discovery demands and

production of witnesses demanded for depositions" and for "attorney's fees to Plaintiff due to

the necessity of filing this motion as authorized by Rule 37(a)([5])A of the Federal Rules of

Civil Procedure."  The defendants oppose the motion.

The plaintiff contends that, on February 15, 2011, she "served her Document Requests,

Interrogatories and Notices of Deposition for ten witnesses," and that the defendants failed to

produce: (1) documents regarding previous whistle-blower litigation against Ernesto Marrero

("Marrero"); (2) notes of interviews conducted by the defendants' agents in connection with the

plaintiff's complaint of retaliation; (3) notes of investigations and interviews by the staff of the defendants' Office of Inspector General ("OIG"); (4) documents relating to a lawsuit by a former employee against Marrero and Health and Hospital Corporation ("HHC") involving whistle-blowing; (5) e-mail communications among the plaintiff and other employees of the defendants; and (6) Marrero's personnel folder.  According to the plaintiff, the documents requested contain relevant information.  For example, the plaintiff argues, Marrero's personnel folder "will include documentation of his history targeting whistle blowers and the ethical complaints made against him by Deborah Gregory a whistle blower he terminated at Bellevue."  Moreover, e-mail communications among the plaintiff, Dr. Ramanathan Raju ("Dr. Raju") and other employees will show that the plaintiff's "performance was not an issue and that corporate officers have been discussing how to terminate Plaintiff illegally."

The plaintiff maintains that the defendants also failed to respond to the following interrogatories requesting that they identify: (a) cases against Marrero based on whistle-blowing (Interrogatory No. 1) and the tapes and reports written about the related investigations (Interrogatory No. 6); (b) individuals contacted by Marrero and Alan Aviles ("Aviles") in connection with this case (Interrogatory No. 8); (c) research programs terminated or suspended during the plaintiff's tenure "as a result of non compliance" and complaints against Marrero by Deborah Gregory ("Gregory") (Interrogatory No. 11); (d) the written warnings about Marrero's ethics and compliance issues provided to the defendants by Jean Gatewood (Interrogatory No. 15); (e) audits conducted at Harlem Hospital during the plaintiff's tenure (Interrogatory No.17); (f) "reports provided by Huron Consulting, an outfit hired by Plaintiff with executive approval to audit the research process" (Interrogatory No. 19); (g) the audits conducted by the plaintiff at Bellevue Hospital in reference to Research Billings Control (Interrogatory No. 24); and (h) non-

2

privileged discussions between Richard Levy, Esq. and the plaintiff (Interrogatory No. 25).  The plaintiff contends that her interrogatories will elicit relevant information revealing that the researchers who complained about the plaintiff are those whose work she audited at Aviles's direction.  Furthermore, according to the plaintiff, the defendants should "identify previous cases of retaliation against Deborah Gregory" as well as the notes and records of the investigation of the plaintiff's retaliation complaints.

The plaintiff contends, the defendants objected to her request to depose Aviles, HHC's president, and Dr. Raju, HHC's executive vice president, "solely on the ground that these witnesses are high agency officials."  Additionally, the defendants objected to the plaintiff's "request to depose Ms. Lisa Lee ["Lee"] and Mr. Louis Panarella ["Panarella"], two investigators from defendants' Inspector General's office . . . on the ground that there is an open investigation."  The plaintiff argues that Aviles should testify at a deposition because he approved the plaintiff's actions and she should be allowed to probe him about the facts concerning her termination.  The plaintiff also maintains that Dr. Raju should give deposition testimony because he gave the plaintiff an "outstanding performance rating for 2007-2008," but stated that she was disloyal when she spoke to the New York Times, and the plaintiff should be allowed to probe him on that issue.  Furthermore, investigators Lee and Panarella should testify, at depositions, because they conducted an investigation about the plaintiff's complaint of retaliation and she "should have the right to depose" them.

The defendants contend, in the part of their memorandum of law entitled "Preliminary Statement," that the plaintiff's motion should be denied because it is untimely.  According to the defendants, the plaintiff's discovery requests were late because she was required, by the scheduling order dated September 24, 2010, to serve her document requests by October 25,

3

2010, and interrogatories by November 22, 2010. Moreover, discovery closed on January 31,

2011. The defendants maintain that the plaintiff failed to comply with the schedule, serving her

discovery requests on February 15, 2011, after the period for pretrial discovery closed. The

defendants contend that Aviles and Dr. Raju, are "high level government officials" and do not

possess any unique knowledge relevant to this action. The defendants maintain that the plaintiff

testified at her deposition that she suspended Columbia University from conducting research on

the instructions of certain attorneys, not Aviles, and it is false for the plaintiff to argue that "the

President of HHC, who was not plaintiff's supervisor and who was several levels above the

plaintiff's supervisor in the hierarchy, would be so involved with plaintiff's duties that he

personally approved plaintiff's improper and unauthorized act of suspending Columbia from

conducting further research." Furthermore, according to the defendants, Aviles did not approve

the plaintiff's termination and, even if he supported it, his knowledge about it "is far from

unique." The defendants contend that "it is unclear how a purported statement by Dr. Raju that

he wanted to terminate plaintiff's employment nearly a year before she engaged in a protected

activity can possibly demonstrate she was terminated for her complaints to the OIG and the New

York Times in April 2009." Moreover, Dr. Raju has no unique knowledge about the reasons for

the plaintiff's termination, and it is "unnecessary to depose Dr. Raju because he did not discuss

or make any decisions concerning the termination of plaintiff's employment." With respect to

the plaintiff's request to depose Lee and Panarella, the defendants contend they will produce

them, "[a]s long as plaintiff limits her inquiry to her complaint that her employment was

terminated in retaliation for filing prior complaints with the OIG and conducts the depositions

after the OIG concludes its investigation into that retaliation claim." According to the

defendants, "[i]t is inappropriate to inquire into other areas of OIG investigations, which are

4

protected by the law enforcement privilege."  The defendants contend that the plaintiff can

obtain information from other sources, and deposing Lee and Panarella, while the investigation

is active, would be compromising.  They argue that their objections to the plaintiff's document

request Nos. 3, 5, 12, 14, 15, 19 and 26 and interrogatories Nos. 1, 6, 8, 11, 15, 17, 19, 24 and 25

are proper because those requests seek irrelevant information, and the plaintiff "seeks discovery

in an effort to prove that her complaints to the OIG and the New York Times were true."

## LEGAL STANDARD

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense–including the existence, description, nature, custody,
> condition, and location of any documents or other tangible things and the identity
> and location of persons who know of any discoverable matter. . . .  Relevant
> information need not be admissible at the trial if the discovery appears reasonably
> calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26 (b)(1).  "[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad,

'encompass[ing] any matter that bears on, or that reasonably could lead to other matter that

could bear on, any issue that is or may be in the case.'"  Maresco v. Evans Chemetics, Div. of W.

R. Grace & Co., 964 F.2d 106, 114 (2d Cir. 1992) (quoting Oppenheimer Fund, Inc. v. Sanders,

437 U.S. 340, 351, 98 S. Ct. 2380, 2389 (1978)).  "A party seeking discovery may move for an

order compelling an answer, designation, production, or inspection."  Fed. R. Civ. P.

37(a)(3)(B).  Motions to compel made pursuant to Fed. R. Civ. P. 37 are "entrusted to the sound

discretion of the district court."  United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

### *Timeliness*

Although the defendants's preliminary statement to their memorandum of law contends

that the plaintiff's motion should be denied as untimely, the defendants did not make any

argument or citation to any authority in support of that contention in their memorandum of law,

in violation of Local Civil Rule 7.1.  It appears that both the plaintiff and the defendants failed to comply with the court's September 24, 2010 scheduling order.  Since the defendants used their failure to comply with the discovery schedule to their advantage, and do not claim the plaintiff's failure to comply with the discovery schedule prejudiced them in any way, equitable estoppel principles militate against a finding that the plaintiff's motion is untimely based on the plaintiff's failure to comply with the discovery schedule.  See Davis v. Wakelee, 156 U.S. 680, 689, 15 S. Ct. 555, 558 (1895) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.").

### Rule 30 Depositions by Oral Examination

Rule 30 of the Federal Rules of Civil Procedure provides: "A party may, by oral questions, depose any person, including a party, without leave of court except as provided in Rule 30(a)(2).  The deponent's attendance may be compelled by subpoena under Rule 45."  Fed. R. Civ. P. 30(a)(1).  "A party who wants to depose a person by oral questions must give reasonable written notice to every other party.  The notice must state the time and place of the deposition and, if known, the deponent's name and address."  Fed. R. Civ. P. 30(b)(1).  A court "may, on motion, order sanctions if: (i) a party or a party's officer, director, or managing agent . . . fails, after being served with proper notice, to appear for that person's deposition."  Fed. R. Civ. P. 37(d)(1)(A).

Although the plaintiff stated that she served her "Notices of Deposition for ten witnesses," she provided no evidence of those notices or any details about their content.  In support of her motion to compel, the plaintiff provided a copy of her letter to the court, dated

June 13, 2011, in which she stated that "Defendants' witnesses were scheduled to be deposed in the second and third week of March 2011. These dates were cancelled to accommodate Defendants's scheduling conflicts and opportunity to receive Defendants' discovery responses." She also stated in that letter that, on June 9, 2011, the defendants informed her that they "will not be producing four witnesses because two are high agency officials and because the other two are working on the Pegoraro investigation which is still an open investigation." It appears from the plaintiff's motion that the plaintiff's notices of deposition were cancelled by the plaintiff to accommodate the defendants' schedule and no subsequent notices of deposition were given to the four witnesses at issue here: Aviles, Dr. Raju, Lee and Panarella. In support of her motion to compel, the plaintiff failed to provide evidence of any deposition notices. Moreover, the plaintiff does not seek sanctions pursuant to Rule 37(d) for failure of a party to attend its own deposition. Since the plaintiff may: (i) depose by oral questions any party or person, except under certain circumstances, which do not appear to apply here; and (ii) compel a proposed deponent's attendance by subpoena, under Rule 45 of the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 30, Rule 37 does not contemplate a motion for an order "to compel . . . production of witnesses demanded for depositions." Although Rule 37(d) provides sanctions for a party or a party's officer's failure to attend its own deposition, no evidence was presented and no argument made that the witnesses at issue actually failed to attend their depositions. Absent evidence that the witnesses at issue were given reasonable written notices stating the time and place of their depositions, as required by Rule 30(b)(1), or that they failed to comply with subpoenas compelling their attendance, pursuant to Rule 45, the Court has no authority to

compel witnesses, including the parties, to attend any depositions which were neither noticed nor for which subpoenas were issued.

### Rule 33 Interrogatories to the Defendants

Rule 33 of the Federal Rules of Civil Procedure provides that a "party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1). "The grounds for objecting to any interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). "[B]oilerplate objections that include unsubstantiated claims of undue burden, overbreadth and lack of relevancy," while producing "no documents and answer[ing] no interrogatories . . . are a paradigm of discovery abuse." Jacoby v. Hartford Life & Accident Ins. Co., 254 F.R.D. 477, 478 (S.D.N.Y. 2009). A party resisting discovery has the burden of showing "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive, . . . by submitting affidavits or offering evidence revealing the nature of the burden." Compagnie Francaise d'Assurance pour le Commerce Exterieur v. Phillips Petroleum Co., 105 F.R.D. 16, 42 (S.D.N.Y. 1984) (citation omitted).

The defendants objected that the plaintiff's Interrogatory: (a) No. 1[1] is overbroad in time

---

[1] Interrogatory No. 1 states:
Identify all lawsuits or administrative agency actions at federal, state, and city or local levels initiated against individual defendants and HHC, not including the City of New York, that are based only on whistle-blowing retaliation since January 1, 2007. Please identify the parties, date action was filed, status disposition, and jurisdiction where action was filed. Identify the documents used in providing the answer to this interrogatory and persons consulted in providing this answer.

and scope and seeks irrelevant information; (b) No. 6[2] is overbroad in scope and "seeks information that is protected from disclosure by the law enforcement privilege and investigative privilege or any other applicable privilege and is not relevant"; (c) No. 8[3] is overbroad in scope, vague, ambiguous and seeks irrelevant information; (d) No. 11[4] is overbroad in time and scope, "vague and ambiguous with respect to the terms 'ethical and non ethical complaints,' and seeks information in contravention of Local Civil Rule 33.3, and is not relevant"; (e) No. 15[5] "is overbroad with respect to scope, assumes facts that have not been established, vague and ambiguous with respect to 'allegations made by Jean Gatewood,' and seeks information in contravention of Local Civil Rule 33.3, [and] is not relevant"; (f) No. 17[6] is overbroad in time and scope, "assumes facts that have not been established, vague and ambiguous with respect to the term 'ethical and non ethical complaints,' and seeks information in contravention of Local

---

[2] Interrogatory No. 6 states: "Identify all the reports, if any, written by the staff of the office of the HHC Inspector-General in reference to any complaints made by Nonie Pegoraro or Nancy Moynihan. Identify the individuals and documents consulted in providing this answer."

[3] Interrogatory No. 8 states: "Identify separately all persons, in public and private employment, who have been contacted by the two natural persons, Mr. Marrero and Mr. Aviles, who are defendants in this case, since the two defendants became aware of this case and identify the documents and persons contacted in providing this response."

[4] Interrogatory No. 11 states: "Identify all the ethical and non ethical complaints former employee, Deborah Gregory, Nonie Pegoraro, and any other employee made against Defendant Ernesto Marrero since January 2, 2005."

[5] Interrogatory No. 15 states: "Identify any and all allegations made by Jean Gatewood of NYU School of Medicine concerning Ernesto Marrero's failure to implement the ticketing system to stop the illegal billing of research related services."

[6] Interrogatory No. 17 states: "Identify the reasons for the dissolution of Harlem Hospital's IRB during the tenure of Pegoraro with HHC and identify any audit conducted by Pegoraro or any other person or entity in relationship to any IRB at Harlem Hospital and identify the documents and persons contacted in answering this interrogatory."

Civil Rule 33.3, [and] is not relevant"; (g) No. 19[7] is overbroad in scope and seeks irrelevant

information; (h) No. 24[8] is overbroad in scope, "unduly burdensome" and seeks irrelevant

information; and (i) No. 25[9] is overbroad in scope, in contravention of Local Civil Rule 33.3 and

irrelevant.

Interrogatory No. 1

The defendants contend that the plaintiff does not define "administrative agency action"

or set forth any reason for requiring such information since any prior lawsuits against HHC "are

not any sort of evidence that plaintiff's employment was terminated because she attempted to

have the *New York Times* write a story about purported corruption at HHC or for filing

complaints with the OIG."  According to the defendants, "identification of lawsuits against HHC

and its President would be a monumental and burdensome task."  Moreover, Interrogatory No. 1

"is beyond the scope of Local Civil Rule 33.3."

The defendants' belated objection to Interrogatory No. 1, based on the ground that it is

beyond the scope of Local Civil Rule 33.3, is waived because it was not stated as an objection in

their response to Interrogatory No. 1, and no good cause was shown for that failure.  See Fed. R.

Civ. P. 33(a)(4).  In their answer to Interrogatory No. 1, the defendants failed to: (a) object that it

---

[7] Interrogatory No. 19 states: "Identify any report, findings, and recommendations provided to defendants by Huron Consulting Firm in or after December 2007 concerning research management operations or any other areas.  Identify the persons and documents consulted in providing this answer."

[8] Interrogatory No. 24 states: "Identify all audits conducted by Pegoraro in reference to Bellevue Research Billing Controls and Accounting procedures.  Please identify the individuals and documents consulted in providing this answer."

[9] Interrogatory No. 25 states: "Identify the contents of all discussions between Richard Levy, Esq., and Pegoraro in retaliation to questions from and providing information to the New York Times.  Please identify the individuals and documents consulted in providing this answer."

is not clear; and (b) specify that it does not define "administrative agency action."  They waived those objections by failing to assert them in their answer to Interrogatory No. 1.  Moreover, apart from not explaining why answering Interrogatory No. 1 "would be a monumental and burdensome task," the defendants also waived that objection because they failed to assert it in their answer to Interrogatory No. 1, without showing good cause for the failure.  The plaintiff's Interrogatory No. 1 appears reasonable in time and scope because it covers the relevant time period starting in 2007 and is limited to prior lawsuits against HHC and individual defendants.  Interrogatory No. 1 is relevant to the claims and defenses in this action because the plaintiff alleged instances of other retaliation by the defendants against whistle-blowers.  The defendants' contention that the prior lawsuits against HHC "are not any sort of evidence that plaintiff's employment was terminated because she attempted to have the *New York Times* write a story about purported corruption at HHC or for filing complaints with the OIG" is of no import.  This is so because the scope of discovery is broad, and the relevant information sought by Interrogatory No. 1 "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  The information the plaintiff seeks through Interrogatory No. 1 appears to be of a type that will lead to the discovery of admissible evidence.  Therefore, the defendants must answer Interrogatory No. 1.

Interrogatory No. 6

The defendants contend that part of Interrogatory No. 6 seeking information concerning Nancy Moynihan, whose employment with HHC, according to the defendants, was terminated by the plaintiff, is irrelevant to her claims.  The only factual allegation in the complaint about "Nancy Moynihan" is in paragraph 123, namely, that during "the HHC Executive Corporate

11

Compliance meeting at the request of Mr. Stanley Pruszynski," on an unspecified date, "Dr. Ramanathan Raju, Barbara Keller, Stacy-Ann Christian, Nancy Moynihan, Joanne Lischin, and Maxine Katz were present."  The plaintiff did not make any other allegations: (a) about "Nancy Moynihan" that would identify who she might be or what acts or omissions are related to her; or (b) in connection with any complaints about which the HHC Inspector General's staff may have written any reports.  Thus, the part of Interrogatory No. 6 seeking information in connection with "Nancy Moynihan" is irrelevant and need not be answered.

A privilege exemption from discovery must be made expressly and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).  The federal law enforcement investigative privilege is a qualified privilege whose purpose is "to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." United States v. Myerson, 856 F.2d 481, 483-84 (2d Cir. 1988).  In determining whether the law enforcement investigative privilege applies, courts must balance the harm arising from public disclosure of investigatory files against the litigant's substantial need for information as well as the public's interest in disclosure. See United States v. Nixon, 418 U.S. 683, 709-10, 94 S. Ct. 3090, 3108 (1974).  "[T]he ultimate burden of demonstrating the law enforcement privilege is on the party asserting the privilege." Dinler v. The City of New York, 607 F.3d 923, 945 n.23 (2d Cir. 2010).

The defendants failed to: (i) produce any privilege log; (ii) describe, with any specificity, the nature of the information withheld; (iii) explain how and why the law enforcement

investigative privilege applies to the information sought; or (iv) describe what harm will result from disclosure.  Furthermore, they failed to explain why the harm from disclosure warrants protection more than the substantial benefit to the plaintiff warrants disclosure.  The defendants did not discharge their burden in showing that the law enforcement investigative privilege applies.  The part of Interrogatory No. 6 which seeks information concerning the plaintiff is limited in scope, as it covers only written reports by "the office of the HHC Inspector-General in reference to any complaints made by Nonie Pegoraro" and must be answered.

> Interrogatory No. 8

The defendants' objections that Interrogatory No. 8 is overbroad in scope, vague and ambiguous are proper.  The plaintiff seeks identification of "all persons" contacted by Marrero and Aviles since they became aware of this case, without specifying any subject matter or otherwise limiting the scope of the interrogatory to any matter relevant to this action.  Therefore, the defendants need not answer Interrogatory No. 8.

> Interrogatory No. 11

The defendants' objection that Interrogatory No. 11 is "vague and ambiguous with respect to the term 'ethical and non ethical complaints'" is disingenuous because "ethical and non ethical complaints" is just another way of saying all complaints.  The part of the plaintiff's Interrogatory No. 11, seeking information pertinent to former employee, Deborah Gregory, is irrelevant because no allegation exists in the complaint about Deborah Gregory and the plaintiff failed to identify who she might be or how she is relevant to this action.  Local Civil Rule 33.3 provides:

> Unless otherwise ordered by the Court, at the commencement of discovery, interrogatories will be restricted to those seeking names of witnesses with knowledge of information relevant to the subject matter of the action, the computation of each

13

category of damage alleged, and the existence, custodian, location and general description of relevant documents, including pertinent insurance agreements, and other physical evidence, or information of a similar nature.

The defendants are correct that Interrogatory No. 11 is in contravention of Local Civil Rule 33.3; thus, they need not respond to it.

Interrogatory No. 15

Interrogatory No. 15 is overbroad in its scope and vague and ambiguous.  The plaintiff did not specify where, when and to whom any "allegations" were made by Jean Gatewood. Interrogatory No. 15 also fails to comply with Local Civil Rule 33.3, and it need not be answered.

Interrogatory No. 17

Interrogatory No. 17 violates Local Civil Rule 33.3, and need not be answered.

Interrogatory No. 19

Interrogatory No. 19 is overbroad in its scope because it seeks "any report, findings, and recommendations provided to defendants by Huron Consulting Firm in or after December 2007 concerning research management operations or any other areas," without limiting the scope to the subject matter or issues relevant to this action.  Moreover, it also seeks irrelevant information, and it need not be answered.

Interrogatory No. 24

Interrogatory No. 24 is relevant to the plaintiff's claims and not overbroad in its scope; rather, it is limited in its scope because it seeks only the audits conducted by Pegoraro and only those in connection with Bellevue Research Billing Controls and Accounting procedures.  The defendants failed to explain how answering Interrogatory No. 24 is unduly burdensome.  Thus,

they must answer Interrogatory No. 24.

Interrogatory No. 25

Interrogatory No. 25 fails to comply with Local Civil Rule 33.3, and it need not to be answered by the defendants.

**Rule 34 Producing Documents**

"A party may serve on any other party a request within the scope of Rule 26(b)" to produce documents within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). The responding party must either produce documents sought in each request or "state an objection to the request, including the reasons." Fed. R. Civ. P. 34(b)(2).

Document Request No. 3

Document Request No. 3 seeks all documents in the defendants' possession that "relate to any whistle blower litigation or any whistle blower administrative proceedings HHC instituted in the last 5 years, or defended other than the instant proceeding." The defendants objected that Document Request No. 3 is overbroad in time and scope, unduly burdensome and seeks irrelevant documents. The plaintiff contends she needs the documents requested "for purpose of notice and to show intentional acts by Marrero to retaliate against whistle blowers." The defendants contend that the plaintiff did not limit her request in any way and the burden of her request substantially outweighs any likely benefit.

Document Request No. 3 is overly broad in its scope because it seeks all documents in connection with any whistle-blowing litigation or proceeding involving the defendants, regardless of the specific nature of the proceeding and factual circumstances underlying those proceedings. Although the plaintiff, in her motion, attempts to limit the scope of Document Request No. 3, the defendants' objection to the scope of this request is valid. The request is also

15

overbroad with respect to time and the plaintiff failed to explain why her request, dated May 13, 2011, sought documents "in the last 5 years," given that the relevant time period of the alleged wrongdoing in the complaint commenced on or about August 2007 and the complaint was filed on January 5, 2010.  The defendants need not disclose any documents in response to Document Request No. 3.

Document Request No. 5

Document Request No. 5 seeks "[a]ll written statements provided to Defendants or their agents by any person contacted or interviewed in connection with this action by or on behalf of Defendants."  The defendants objected that the request is overbroad in scope and seeks irrelevant information, and that they "are not in possession, custody, or control of any documents responsive to this request."  In her motion, the plaintiff contends that the defendants "refused to produce notes of interviews conducted by its agents, including non-law enforcement personnel, in reference to the Investigation of Plaintiff's complaint of retaliation."  The defendants contend that "it is inappropriate for plaintiff to request documents for the first time in a motion to compel," and "the OIG report on her complaint of retaliation can be provided to plaintiff at the close of the OIG's investigation into that complaint, properly redacted and subject to an appropriate protective order, which is expected to occur in four to six months."  Moreover, the defendants are not in possession or control of any documents requested because they "had not received any written statements in connection with this action."

Notwithstanding the defendants' objections, the defendants responded to the plaintiff's request, explaining that they did not receive any written statements in connection with this action.  The plaintiff cannot change the substance of Document Request No. 5 in her motion to compel.  Since the defendants responded to Document Request No. 5, the plaintiff's request to

compel them to respond is moot.

Document Request Nos. 12 and 14

Document Request No. 12 seeks "[a]ll documents produced and received by the Inspector General of HHC in relation to acts involving the conduct of Plaintiff." Document Request No. 14 seeks "[a]ll investigative notes and reports prepared by staff of HHC Inspector General in reference to Plaintiff or the office she headed prior to her termination by HHC." The defendants objected that Document Request Nos. 12 and 14 are overbroad in scope and seek documents protected by the law enforcement and investigative privilege as well as irrelevant documents. Moreover, Document Request No. 12 is vague and ambiguous with respect to the phrase "acts involving the conduct of Plaintiff." The plaintiff contends she "needs these notes to refute Marrero's answer and to prosecute her case." The defendants contend the "only complaint to OIG that is relevant to this action, and which will be produced to plaintiff, is the complaint that her employment was terminated for filing prior complaints with the OIG."

The defendants failed to: (i) produce a privilege log; (ii) describe, with any specificity, the nature of the information withheld; (iii) explain how and why the law enforcement investigative privilege applies to the information sought; and (iv) describe, with particularity, what harm will result from disclosure. Furthermore, the defendants failed to explain why the harm from disclosure warrants protection more than the substantial benefit to the plaintiff warrants disclosure. The defendants did not discharge their burden in showing that the law enforcement investigative privilege applies to protect the defendants from responding to Document Request Nos. 12 and 14. However, the defendants' objection that the phrase "acts involving the conduct of Plaintiff" in Document Request No. 12 is vague and ambiguous is sustained, and they do not need to respond to Document Request No. 12. Document Request

17

No. 14 is: (a) limited in scope, because it seeks documents specific to the plaintiff and the office she headed prior to her termination; and (b) relevant to the claims or defenses in this action. Therefore, the defendants must respond to Document Request No. 14.

<u>Document Request No. 15</u>

The plaintiff seeks "[a]ll documents concerning any communication and/or any lawsuit or legal action between Defendants or their representative(s) and any former employee who reported to Plaintiff including but not limited to Nancy Moynihan." The defendants objected that the request is overbroad in scope and seeks irrelevant documents. The plaintiff contends these documents are "needed for notice and intent." The defendants contend that the allegations in other lawsuits against HHC "are entirely collateral" and irrelevant.

Document Request No. 15 is overbroad in scope because it seeks all documents, without any limitation, concerning any communication, lawsuit or legal action, regardless of its nature and content, between the defendants and any former employee who was supervised by the plaintiff. Therefore, the defendants need not respond to Document Request No. 15.

<u>Document Request No. 19</u>

Document Request No. 19 seeks documents pertinent to any communication between the plaintiff and numerous individuals, including attorneys who represented the defendants and persons not employed by the defendants, and "[a]ll documents concerning or obtained as a result of any formal or informal investigation conducted by Defendants or anyone on Defendants' behalf regarding Plaintiff's allegations, other than those which represent attorney-work product." The defendants objected that the request is overbroad in time and scope, unduly burdensome, seeks "documents that may be protected by the attorney-client, attorney work-product, or any other applicable privilege" and irrelevant documents. The plaintiff contends that the defendants

18

"did not produce copies of emails between Plaintiffs and other employees, including Marrero and Dr. Raju, amongst others" and these "correspondences would show the anger and disapproval directed towards Plaintiff for fighting corruption and will attack Marrero's defense that Plaintiff is unfit for her job." The defendants contend that they produced e-mail messages from Marrero.

The defendants' speculation, in their objection to Document Request 19, that documents "may be protected" by the attorney-client privilege or any other privilege is not sufficient to invoke a privilege. The part of Document Request No. 19 which seeks all documents "containing any communications between Plaintiff" and numerous individuals, is overbroad in scope, because it seeks any communication regardless of its nature. It is also overbroad in time, because it is not limited to any time period; thus no response needs to be made to it. The part of Document Request No. 19 seeking documents concerning any formal or informal investigation by the defendants "regarding Plaintiff's allegations" is limited in scope and specifically targets documents in connection with any investigation of the plaintiff's allegations by the defendants or on their behalf. Although the request does not provide a time limit, given the time period the plaintiff worked for the defendants, the relevant time period is implied and the defendants failed to demonstrate that this part of the request is overly broad in time. As the defendants' objections cannot be sustained, documents sought in the second part of Document Request No. 19 must be produced.

Document Request No. 26

Document Request No. 26 seeks "Defendant Ernesto Marrero['s] complete personnel folder." The defendants objected that the request is overbroad in scope, "seeks disclosure of documents in violation of the Health Insurance Portability and Accountability Act, and seeks

confidential and private documents that may unnecessarily impede on the privacy of the individuals identified in this request." The plaintiff contends she needs Marrero's folder "because it documents Marrero's troubling history of retaliation and should document Plaintiff['s] correspondence to Mr. Aviles expressing concern when he (Marrero) was made Compliance Officer." The defendants contend the plaintiff speculates about the content of Marrero's personnel folder and, whether she believed that he was not qualified to be a corporate compliance officer is irrelevant. Additionally, they are "in the process of obtaining Mr. Marrero's personnel file and his performance evaluation for 2007 to the present and any documents, to the extent they exist, relating to discipline for retaliating against employees for filing OIG complaints will be produced to plaintiff upon entry of an appropriate stipulation and order of confidentiality."

Document Request No. 26 seeks irrelevant information. The plaintiff's speculation about the content of the personnel folder is not sufficient to show that Marrero's personnel folder is relevant. Thus, Marrero's personnel folder need not be produced.

***Attorney's Fees Pursuant to Rule 37***

"If the motion is granted in part and denied in part, the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Since the defendants were justified in objecting to most of the plaintiff's discovery demands at issue in her motion to compel, and the plaintiff's motion to compel is granted only to an insignificant extent, namely: (a) Interrogatory Nos. 1, 6 (partly) and 24; and (c) Document Request Nos. 14 and 19 (partly), apportioning the reasonable expenses in connection with making the motion is not warranted.

20

## CONCLUSION

For the foregoing reasons, the plaintiff's motion to compel, Docket Entry No. 35, is

granted, in part, and denied, in part.  On or before November 14, 2011, the defendants must

provide discovery, as indicated above.

Dated: New York, New York
       November 2, 2011

SO ORDERED:

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE